## ROBERT LEITCH *et al.*

### *v.*

## MARIA J. BOYINGTON.

1. LANDLORD AND TENANT—*apportionment of rent.* If parties in possession of premises under a lease from one who has departed this life, after the death of the landlord pays one of the heirs his equitable share of the rent, this will establish the relation of landlord and tenant, and entitle such heir to recover rent for the subsequent use of the premises.

2. SAME—*rent after agreement to cancel lease.* Where lessees of premises acquire the title from a portion of the heirs of the original lessor, and agree with another one of the heirs to procure a partition of the property. and in that event that the lease shall be canceled, and no more rent paid, if the partition is delayed a year when an immediate one was contemplated, the lessees will be liable to such heir for his *pro rata* share of the rent, until the partition is consummated.

3. ATTORNEY'S FEES—*when allowed under lease authorizing.* Although a lease may provide for allowing an attorney's fee for enforcing the covenants thereof, yet, when a new arrangement is made, so that the suit for rent is not upon the lease, it is error to allow an attorney's fee in the case.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. J. H. KNOWLTON, and Mr. E. P. WEBER, for the appellants.

Mr. ALLAN C. STORY, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

On October 14, 1867, Elizabeth Wilder, the wife of Benjamin Wilder, leased certain property in the neighborhood of the stockyards, in Chicago, to Turner & Maxfield, at a yearly rent of $1500, for a term commencing October 14, 1867, and ending January 1, 1876.

About a year after this, Mrs. Wilder died intestate, and Benjamin Wilder, by deed, released all his interest to the children of Mrs. Wilder (and their representatives), being ten in number, of whom Mrs. Boyington, the appellee, was one. The interest of Turner & Maxfield was transferred to appellants, who succeeded Turner & Maxfield in the possession. The appellants recognized appellee as entitled to one-tenth of the accruing rent, and paid rent to her at the rate of $150 per annum, for some time previous and up to January 1, 1873. Before that time, each of the appellants had acquired one-tenth interest in the property, by purchase, from some of the interests of other of the descendants of Mrs. Wilder.

About this time, negotiations took place between appellee and appellants, and some of the other owners, for a division or partition of the property, and appellants agreed that, upon partition being made, they would surrender their rights in the lease from Mrs. Wilder to Turner & Maxfield, and it is insisted by appellants that it was then agreed by appellee and others, that in that event no more rent was to be paid under this lease after January 1, 1873. Proceedings for partition were begun soon after, and consummated in April, 1874.

Pending these proceedings, appellants, or one of them, had leased a part of their property to one Storer, at an annual rent of $800. In the partition, the part of the property covered by the Storer lease was allotted to the appellee. On the day of the entry of the final decree of partition, this Storer lease was transferred to appellee, and the original lease to Turner & Maxfield was canceled and surrendered by appellants.

This suit was brought by appellee for her share of the rent

under the Turner & Maxfield lease, for the time intervening between the first of January, 1873, and May 1, 1874.

There is also a claim for attorney's fees in prosecuting this suit. This claim is set up under a clause in Mrs. Wilder's lease, by which Turner & Maxfield covenanted and agreed to pay and discharge all costs and attorney's fees and expenses that shall arise from enforcing the covenants, etc. A jury was waived, and the issues tried by the court. The finding was for plaintiff below, $150 as rent and $50 as attorney's fees, and judgment was for $200 and costs.

At the trial, testimony was given in behalf of the plaintiff, tending to prove that on the day of the entering of the final decree of partition and the surrender of the leases, appellee, by her agent, insisted, as a condition precedent to this final adjustment, that the share of the rent accruing to her from January 1, 1873, until May 1, 1874, under the Turner & Maxfield lease, should be paid by appellants, and Powell, one of appellants, promised that this rent should be paid, and that this promise was accepted as a part of the basis of final adjustment. The evidence on this subject was contradictory, and was given in the presence of the judge who tried the case, who had a much better opportunity of arriving at the truth than we have on the examination of this record.

We do not feel authorized, by anything in the record, to disturb this finding.

In the absence of the several agreements sworn to in connection with this arrangment as to the partition, the appellants were clearly liable to appellee for this rent. They were in the possession and enjoyment of the premises. under a lease, at a rent of $1500 a year, to one-tenth of which appellee was equitably entitled, and they had recognized that equity, and established the relation of landlord and tenant with her, before this time, by paying to her the *pro rata* share of this rent for a time before January 1, 1873.

Several witnesses testify, in substance, that, early in the year 1873, this arrangement to have partition made was agreed upon, and that it was part of that agreement the Turner &

Maxfield lease should be canceled, and no more rent was to be paid upon the same. In contemplation of the parties to this agreement, all this was to be done without delay. This agreement, for some reason, was not fulfilled. The proceedings, for some cause, were delayed, and appellants continued in the enjoyment of the premises, and rented to other parties portions of the premises, and received rent therefor. When the final adjustment was reached, it was not unreasonable, the status of affairs being changed, that some equitable arrangement should be made in relation to the rents for the intervening period. If the Turner & Maxfield lease had been canceled at the time contemplated by the original agreement in 1873, there would have been no rent to pay. In the release of the Turner & Maxfield lease, executed on the 22d of May, 1874, sixty days are given appellants to remove their fixtures. This is a new element, not mentioned in the first agreement. The final consummation of this agreement for partition, and the cancellation of the old lease, were evidently brought about upon a modification of the original arrangement. In determining what that new arrangement was, in deciding whether it was as the witness Boyington swears it was, or as the witness Powell swears it was, it was not improper that the judge who tried the case should consider the relative equity of the two arrangements, and hence their relative probability. It would seem that the finding rests on the hypothesis that the rent from January 1, 1873, until May 1, 1874, was agreed by appellee to be surrendered, and, the final adjustment having been delayed a year longer than anticipated, the parties agreed that the use of the property had by appellants by reason of this delay, not having been provided for in the original agreement, was agreed to be paid for under the final arrangement, and for that reason the rent allowed was but $150, instead of $200.

The finding of $50 for attorney's fees can not, however, be sustained. The recovery of rent by appellee rests rather upon the agreement between her and the appellants, growing out of the original lease and their subsequent relations, and is not

founded upon the covenants of the lease, although the lease furnished the rate at which rent should be allowed. The allowance of attorney's fees was error.

The judgment is reversed at the costs of appellee, and the cause remanded with direction to the circuit court to enter judgment for the plaintiff below for the sum of $150 and for costs in the court below.

*Judgment reversed.*