GEORGE M. EHRMAN *vs.* CHARLES F. MAYER, and
others.

*Rent reserved in a Lease for* 99 *Years Renewable forever, a
Rent Service and Apportionable—Non Demand and Non
Payment of Rent—Presumptions—Renewal of Lease—Sub-
stantial Sum in Apportionment of Rent.*

In September, 1782, J. E. H. leased to J. H. a lot of ground, now
fronting about 169 feet on Howard street in Baltimore City, for
ninety-nine years, with the usual covenant for perpetual renewal,
reserving a yearly rent, equivalent to about $43, of the present
currency. In January, 1828, J. E. H's executors under a power in
his will, sold and conveyed the reversion in this lot to a person,
who on the 2nd November, 1832, conveyed the same to L. S. L. S.
on the 3rd November, 1832, accepted a surrender from E. L. of his
leasehold interest in a part of the lot, about 122 feet of its frontage;
and on the same day, by two leases, leased for ninety-nine years,
renewable forever, sixty feet of the same, to S. and S., and sixty-two
feet and six inches of the same, to E. L., reserving in each lease a
yearly rent of $300. L. S. never disposed of her reversion in the
residue of the lot, consisting of a frontage of about forty-six feet.
In June, 1864, G. M. E. purchased from the then owners of the

leasehold interests, their lot, fronting twenty-two feet on Howard street, a part of the residue of the forty-six feet. The deed by which this interest was conveyed to G. M. E., recited that the grantors acquired their title under an assignment from a person named, in April, 1857, subject to a yearly rent of $88, and they assigned to G. M. E., subject to the same rent; and it was assumed that G. M. E. derived his title from J. H., the original lessee of J. E. H., through *mesne* assignments and sub-leases. To a bill filed by G. M. E. to obtain a decree, requiring C. F. M., who held the legal title under L. S's will, and the *cestuis que trust* under that will, to convey to G. M. E., the naked fee held by them in the twenty-two feet, or to execute to him a new lease thereof for ninety-nine years, renewable forever, subject to a mere nominal rent, the defendants demurred; the demurrer was sustained, and on G. M. E's appeal, it was HELD:

1st. That the rent reserved under the lease from J. E. H. to J. H., (the reversion of which L. S. acquired in 1832,) was a rent service, and not a rent charge, and that it was apportionable; so that by the surrender of the 122 feet from E. L. to L. S., the original rent reserved in the lease of 1782, was not extinguished, but was apportionable to the residue of the forty-six feet, whereof the reversion was owned by L. S. and by those claiming under her will, and that this proportionate part remained fastened upon the forty-six feet.

2nd. That even if it were admitted that no part of the original rent had ever, in the memory of any one now living, been paid by any owner of the leasehold interest in the lot of twenty-two feet, and that that lot had always been treated as discharged and relieved from the payment of any portion of the original rent, nevertheless, the law upon these facts alone, would raise no presumption of some act of the parties in interest relieving the lot of twenty-two feet from payment of any part of the original rent, or its extinguishment *quoad* that lot, and it being conceded that the relation of landlord and tenant once existed between the parties, under the lease of 1782, after the conveyances of 1832.

3rd. That G. M. E. has a right to obtain relief by way of renewal of the lease of 1782, but he can only do this under a bill making proper averments, and bringing before the Court the necessary and proper parties; but that G. M. E. would not be entitled to demand or receive a renewed lease, subject to a merely nominal rent; as the part of the original rent to be apportioned to G. M. E's lot will constitute a substantial, and not a mere nominal sum.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*Benjamin F. Horwitz,* for the appellant.

1. It being admitted that "no part of the original rent reserved by the lease from Howard to Hoos has *in the memory of any one now living,* been paid by the owner of the lot now and for some years past belonging to Mr. Ehrman, and that that lot has always been treated as discharged and relieved from the payment of any portion of said rent," the law will presume some act of the parties in interest relieving the said part of said lot, from the payment of any part of the rent reserved by said lease, or in other words, its extinguishment *quoad* that lot. *Casey's Lessee vs. Inloes,* 1 *Gill,* 430 and 505 ; *Connelly vs. Bowie,* 6 *H. & J.,* 141 and 144 ; *Burke vs. Negro Joe,* 6 *G. & J.,* 136 ; *Beall vs. Lynn,* 6 *H. & J.,* 351 ; *Carroll vs. Norwood,* 1 *H. & J.,* 172 ; *Shilknecht vs. Eastburn,* 2 *G. & J.,* 114 ; *Baltimore Chemical Co's Lessee vs. Dobbin,* 23 *Md.* 210 ; *Day vs. Allender,* 22 *Md.,* 511 ; *Alexander vs. Walters' Lessee,* 8 *Gill,* 255 and 257 ; *Boyd vs. Harris,* 2 *Md. Ch. Dec.,* 214.

2. Lucretia Sears, having accepted a surrender of a large part of said lot originally leased by Howard to Hoos, and having made new leases thereof without the consent of the owner of Mr. Ehrman's lot, thereby extinguished said original rent, as the contract contained in said original lease could not be so divided and severed by her without the consent of the owners of the other parts of said lot ; and it is submitted that the peculiar Maryland or Irish perpetual lease which creates a sort of rent charge, and under which the lessee, according to the law of Mary-

land, becomes almost the absolute owner of the lot leased, cannot be liable to have any subdivision or apportionment of the rent made without the consent of the lessee, as it would work such grave inconveniences and disadvantages, and would enable a ground landlord to become a scourge to his tenant. *Banks vs. Haskie*, 45 *Md.*, 217, 218, 219; *Littleton*, sec. 222; 1 *Thomas' Coke on Littleton*, *m. pp.* 463, 464; *Gilbert on Rents*, 152; *Talbot's Case*, 8 *Coke*, 210; *Bliss vs. Collins*, 5 *B. & A.*, 876.

3. If either of the above views is correct, then Mr. Ehrman had a right to the relief first prayed in order to have the cloud removed from his title. *Davidson vs. Myers*, 24 *Md.*, 538; *Polk vs. Reynolds*, 31 *Md.*, 106; *McCann vs. Taylor*, 10 *Md.*, 418.

4. If the above views are incorrect, then Mr. Ehrman is clearly entitled to a new lease for his lot, and the Court below should have so decreed; and if the Court below was right in its view as to the payment of a proportional part of the fine and tender of a new lease to the trustee, it should have passed a decree for the execution of such lease conditioned on the performance of those acts, but should not have dismissed the bill because they were not done before the filing of the bill, and averred and proved, which would leave the complainant remediless in such a clear case of right. 1 *Story's Eq. Jurisp.*, secs. 26, 27, 28, 437, 439; *Banks vs. Haskie*, 45 *Md.*, 216.

5. But the Court was clearly wrong in this view, because the *cestuis que trust* were all non-residents, and some of them infants, and the trustee had no power delegated to him by the will creating the trust, to execute a proper lease, and the execution thereof would be *ultra vires*. Besides, it is admitted that the trustee refused to take any action whatever in the premises until advised of his duty, which would of course have relieved the complainant from making any tender before filing the bill, even if it had been originally necessary. *Tyson, et al. vs,*

*Latrobe, et al.*, 42 *Md.*, 337 ; *Buel vs. Pumphrey*, 2 *Md.*, 261 and 268.

6. If the appellant is wrong in all these positions, and if it had been impossible to grant *any* relief on the bill filed, then the bill should have been dismissed *without prejudice* in order that in such a clear case of right he might perform the pre-requisites and file another bill. *Story's Eq. Pleadings, sec.* 793 ; *Tyson, et al. vs. Latrobe, et al.*, 42 *Md.*, 339.

*Arthur W. Machen*, for the appellees.

The contention of the bill, that "Lucretia Sears, thereby, (*i. e.* by the acceptance of the surrender of part of the lot from Lilly,) extinguished said original rent," on the ground that "the contract contained in said original lease could not be so divided or severed by her without being entirely avoided and ceasing to subsist," cannot possibly be maintained. The rent in question is a *rent service,* and no proposition has been more clearly settled, ever since the date of the publication of *Littleton's Tenures*, than that if a person who has a rent service, purchase *part* of the the land from which it issues, the rent will be extinguished *only* as to the part purchased, and the amount which will in future have to be paid, will be *apportioned* according to the value of the land. So, likewise, if a lessee for life, or years, *surrender* part of the land to the lessor, or the lessor enter upon part of the land for a forfeiture in part, the rent will be *apportioned*. *Littleton, sec.* 222 ; *Co. Litt.*, 148 *a ; Tudor's Lead. Cas. on Conveyancing*, 258 ; *Ingersoll vs. Sergeant*, 1 *Whart.*, 337 ; *Van Renselaer vs. Chadwick*, 24 *Barb.*, 333. And the rules on this subject are also clearly given in *Woodfall's Land. & Ten.*, (11*th Ed.*,) 364, where, amongst other propositions, it is expressly stated, that "when the lessee surrenders part of the land to the lessor, the rent for the remainder is apportioned."

A claim to *alternative relief* is thus stated in the bill : " Your orator further shews, that even if he is mistaken

in said view of his legal rights, it is necessary for him to have executed to him a new lease of said lot so owned by him, for another term of ninety-nine years, renewable forever, subject to a *merely nominal* rent, as the original lease of said whole lot is about expiring." The prayer of the bill is, " that a decree may be passed for the execution either of a proper deed of the naked fee held by them, (defendants,) in and to your orator's said lot, or for the execution of a new lease thereof to him for other ninety-nine years, renewable forever, whichever it may be determined, he is legally entitled so to receive," and for general relief.

It is manifest that the appellant's right to a new lease, rests altogether upon the *covenant* contained in the original lease. But none of the conditions of that covenant have been fulfilled by the appellant. Before a lessee or his assignee can be entitled, under such a covenant for renewal, to resort to equity, it must appear :

1. That the complainant has, pursuant to the terms of the covenant, prepared at his own cost, and tendered for execution, a proper new lease. And where only a part of the land originally devised remains subject to the lease, the lease offered must be for that remaining part, and the rent therein expressed to be reserved, must bear the same proportion to the rent originally reserved as such part bears, in value to the entire lot. *No* lease has been tendered, or even *proposed*, by the complainant. So far from requesting the execution of any particular lease, he has insisted upon a conveyance of the reversion, and the total extinguishment of the rent, a pretension wholly inconsistent with a demand of a renewal of the former term. Again, in the statement of what he considers as his right, in this aspect of the case, he claims that no more than a *nominal* rent must be reserved in a new lease; but it is certain that the new rent must be actual and substantial, and strictly proportioned to the land remaining

under lease. The same authorities which show the error of the complainant's original contention, that the rent under the present lease has been wholly extinguished, as a consequence of a surrender of part of the land, also show that the existing rent is proportioned to the quantity of land remaining under lease, and that the same proportionate rent must be reserved in any new lease which may be made pursuant to the covenant for renewal.

2. The *arrears of rent* must be first paid. The tenant can only demand a further lease " on. the *payment* of the *rent* and *performance* of the *covenants*, reserved and mentioned in the original lease, to be paid and performed on the part of the lessee and his assigns." Not only is it not averred that the proportionate rent of the lot of forty-six front feet, remaining unsurrendered, has been duly paid, but the bill states that no rent has been for many years past, paid by the occupants of the complainant's part of it, and it cannot be assumed that the possessors of the other part have paid the rent.

As declared by Lord Justice MELLISH, in a recent case, " the tenant must take the covenant to renew as he finds it; if it contains conditions precedent, he must comply with them before he can claim the benefit of it, and if he has not done so, a Court of equity cannot relieve him." *Finch vs. Underwood, L. R.,* 2 *Ch. Div.,* 310–315. And see, to this point *Woodfall Land. and Ten.,* (11*th Ed.,*) 332.

3. The renewal *fine* must be tendered. There is no apportionment of the fine. If a new lease is to be made, it makes no difference that the quantity of land has been diminished. The covenant in terms, expressly exacts a fine whenever a new lease is demanded, and there is no ground for departing from it. The landlord still has all the trouble and responsibility of making a new demise, and is equitably, as well as legally, entitled to the stipulated compensation.

4. The complainant should have shown distinctly *to whom* the new lease is to be made. He himself only

claims to be possessed of twenty-two feet eight inches of the forty-six and a half feet. Even to that part, he has not exhibited his title; had he been paying rent to the owners of the fee, his right as assignee of the lessee might perhaps have been presumed, but he does not claim to have been recognized in that way. As to the holding of the other twenty-three or twenty-four feet, he says nothing at all. The landlord cannot be required to execute *two* leases, one for one part, and one for the other. The covenant is to make a new *lease,* not several concurrent leases. If it be conceivable that circumstances of peculiar equity or great hardship might some time justify an exception to this rule, no such extraordinary case is shown here. *Finch vs. Underwood, L. R.,* 2 *Ch. Div.,* 310.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order sustaining a demurrer to, and dismissing the bill of complaint, filed by the appellant against the appellees. The relief prayed for by the bill, is that the defendants may be required either to convey to the complainant the naked fee held by them in a certain lot of ground in the City of Baltimore, or to execute to him a new lease thereof for ninety-nine years, renewable forever, subject to a merely nominal rent. The facts of the case so far as disclosed by the bill and accompanying exhibits are substantially as follows:

In September, 1782, John Eager Howard executed a lease to John Hoos, of lot No. 649 in Howard's addition to Baltimore Town, for ninety-nine years, with the usual covenant for perpetual renewal, reserving a yearly rent of "fifteen pounds, nine shillings and four-pence, current money." This lot has a frontage on Howard street of about one hundred and sixty-nine feet. In January, 1828, the executors of Howard, under a power contained in his will, sold and conveyed the reversion in this lot with the incident rent to John Hoffman, and on the 2nd

of November, 1832, Hoffman conveyed the same to Lucre-
tia Sears. Having thus become the owner of the rever-
sion in the entire lot, Mrs. Sears on the 3rd of November,
1832, *accepted a surrender* from one Eli Lilly, of his lease-
hold interest in *a large part* of the lot, consisting of about
one hundred and twenty-two feet of its frontage, and on
the same day she executed two leases for ninety-nine
years, renewable forever, of the part so surrendered, one
to Sommer and Smith for sixty feet, and the other to Lilly
for sixty-two feet and six inches, reserving in each lease
an annual rent of $300. It does not appear, nor is it
averred, that she ever made any disposition of her rever-
sion in the *residue* of the lot, consisting of a frontage of
about forty-six feet, which she had acquired under the deed
from Hoffman. She died in 1845, and the defendants are
the trustee and *cestuis que trust,* who hold the legal and
equitable interest in her property under her will. In
June, 1864, Ehrman, the complainant, purchased from
Gardiner and Matthews their leasehold interest in a lot
fronting twenty-two feet on Howard street, *which is con-
ceded to be part of the residue* of the lot above mentioned,
not embraced in the two leases of November, 1832. The
deed by which this interest was conveyed to Ehrman,
recites that the grantors acquired their title under an
assignment from one John Harman, executed in April,
1857, subject to a yearly rent of $88, and they convey to
Ehrman, subject to the same rent. No conveyance is pro-
duced showing how Harman acquired his title, nor is any-
thing further stated in reference to the complainant's title.
The bill, however, admits that the lot thus conveyed to
the complainant forms *part* of the lot originally leased by
Howard to Hoos, and from this admission, as well as what
is stated in the several conveyances above referred to, it
must be assumed that the complainant derives his title
from Hoos, *the original lessee,* through *mesne* assignments
and sub-leases. Such being the state of the case, the

complainant, in his bill, avers and insists that he is in fact the owner of his lot in fee, and is entitled to a conveyance of the naked or technical paper title to the reversion therein held by the defendants, upon two grounds.

1st. That Mrs. Sears, by receiving and accepting a surrender of the leasehold interest in a *part of the lot*, in November, 1832, and granting new leases thereof, reserving new and increased rents, thereby *extinguished the whole original rent* reserved under the lease from Howard, and complainant's lot, therefore, by operation of law, became released and relieved from the payment of any part of that rent.

2nd. Because no part of the original rent reserved by the Howard lease has, in the memory of any one now living, been paid by the owner of the lot now held by the complainant, and this lot has always been treated as discharged and relieved from the payment of any portion of that rent.

*First.* To sustain the first position, the appellant's counsel insists that the rent reserved under our peculiar leases with covenants for perpetual renewal, is in the nature of a *rent charge*, which cannot be subdivided or apportioned. And where the party having the rent, purchases any portion of the land charged with its payment, the whole rent is thereby extinguished. But conceding this to be the case with respect to a *rent charge*, it is clearly not so, and never has been, with respect to a *rent service*, but just the contrary. In *Littleton's Tenures, sec.* 222, the common law upon the subject is thus stated: " Also, if a man hath a *rent charge* to him and his heirs, issuing out of certain land, if he purchase any parcel of this to him and his heirs, all the rent charge is extinct, and the annuity also, because the rent charge cannot by such manner be apportioned; but if a man which hath a *rent service*, purchase parcel of the land, out of which the rent is issuing, *this shall not extinguish all but for the par-*

*cel;* for a rent service in such case may be *apportioned* according to the value of the land." And in his comments upon this section, Lord COKE says, that such rent services as were not within the Statute *Quia Emptores,* were apportionable at common law: "as if a man maketh a lease for life or years, reserving a rent, and the lessee *surrender part* to the lessor, the rent shall be apportioned; so if the lessor recovereth part of the land in an action of waste, or entereth for a forfeiture in part, the rent shall be apportioned." *Coke Litt.,* 148a. The reasons upon which this distinction rests, as given by Lord COKE and Chief Baron GILBERT need not be stated at length. It is sufficient for our present purpose, that such distinction has in fact existed from the earliest period of the common law. By the same authority (*Littleton, sec.* 213,) *rent service* is defined to be "where the tenant holdeth his land of his lord by fealty and *certain rent,* or by homage, fealty and *certain rent,* or by other services and *certain rent;*" and in *Smith's* concise and admirable lectures on the *Law of Landlord and Tenant,* (*marginal page* 90,) it is said that "every rent *reserved upon a lease* is a *rent service,* and is accompanied by that which is the incident of every rent service, namely, a right on the part of the lessor to distrain for it." In leases like the one now before us, as well as in other leases of land, the rent most commonly reserved, is the yearly payment of a certain sum of money. According then, to the authorities referred to, (and none higher can be adduced,) if in such case, the lessee surrenders a part of the land to the lessor, the rent for the remainder is not extinguished, but apportioned. *Woodfall's Land. & Ten.,* (*10th Ed.,*) 361, 362. We hold then that *apportionment,* and not *extinguishment,* was the result of the conveyances of November, 1832, and that a proportionate part of the original rent reserved in the lease of 1782, remained fastened upon the *residue* of the lot not embraced in those deeds.

Ehrman *vs.* Mayer, *et al.*

*Second.* In our opinion, the second position is equally unavailing and untenable. The bill does not aver that the complainant or those under whom he claims the lot in controversy, ever acquired title thereto by adverse possession. But even if that were the case, he would be compelled to stand upon or assert such a title at law, for it is very clear that a party whose title confessedly originates solely in a disseisin, has no right to ask a Court of equity to reinforce that title by decreeing a conveyance of the paper title, by the true owner. But, if the theory of extinguishment by surrender be out of the case, the bill, as we understand it, concedes that the relation of landlord and tenant did exist, after the conveyances of 1832, between the then owner of the reversion and the then owner or owners of the leasehold interest in the residue of the lot not affected by these conveyances, and the argument is, that as no part of the original rent reserved by the Howard lease, has ever, in the memory of any one now living, been paid by any owner of the leasehold interest in the particular lot now held by the complainant, and that as that lot has always been treated as discharged and relieved from the payment of any portion of that rent, the law will *presume some act* of the parties in interest, relieving this lot from payment of any part of that rent, or its extinguishment *quoad* this lot. But, upon these facts alone, the law, in our judgment, raises no such presumption, and clearly not in a case where it is conceded the relation of landlord and tenant once existed between the parties under a lease like the present. On the contrary, in *Campbell vs. Shipley*, 41 *Md.*, 81, where a similar lease was under consideration, the authorities were reviewed, and it was held to be well settled, that when the relation of landlord and tenant has been created, the possession of the tenant is consistent with the title of the landlord, and the *mere non-demand and non-payment of rent*, are not sufficient to bar the landlord's title, whatever effect they may have, if long continued, upon

Ehrman *vs.* Mayer, *et al.*

his right to recover the rent; and not only is the tenant precluded from relying on his possession to bar his landlord, but also all persons who come in under or derive possession from the tenant in any manner however remotely. In such cases, possession is presumed to be in accordance with the title, and this presumption will hold until some notorious and unequivocal act of exclusion shall have occurred.

For these reasons, we are of opinion, the complainant has not made out a case entitling him to the relief first prayed in his bill, and this brings us to the alternative relief claimed, which we shall consider very briefly. There can we think, be no question as to his right to obtain relief by way of a renewal of the lease, but he can only do this under a bill making proper averments, and bringing before the Court the necessary and proper parties. What averments such a bill must contain, who should be parties to it, upon what conditions the owners of the reversion will be compelled to renew, and whether they can be required to execute more than one renewed lease for the entire residue of the lot not covered by the deeds of 1832, are all questions of importance and some of them not free from difficulty, but the present case does not call for a decision of any of them. The complainant asks that there may be made to him a renewed lease of this lot *subject to a merely nominal rent,* and this, if we are right in the views already expressed, he is clearly not entitled to demand or receive. The rent reserved under the original lease, was a substantial money rent, and the part thereof to be apportioned to this lot, will still constitute a substantial and not a mere nominal sum. The result then is, that the order appealed from, must be affirmed, but the affirmance will be made without prejudice to the complainant's right to file a new bill as above indicated.

*Order affirmed without prejudice.*

(Decided 1st March, 1882.)