HENRY ARND ET AL. *v.* MILTON R. LERCH.
[No. 46, January Term, 1932.]

*Decided April 8th, 1932.*

The cause was submitted on briefs to Bond, C. J., Patti-son, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Louis J. Jira* and *Powell Vickers,* for the appellants.

*Howard C. Bregel* and *Young, Crothers & Settle,* for the appellee.

Offutt, J., delivered the opinion of the Court.

Henry Arnd and Annie Arnd, his wife, on June 7th, 1929, contracted in writing with Milton R. Lerch to sell to him at and for the price of $30,000 a tract of land 252 feet 5½ inches by 1,550 feet, more or less, on a proposed road, Wood-ring Avenue, east of the Harford Road in Baltimore City, Md., and to furnish him a good and merchantable title to the same. The vendee paid on account of the purchase price $500, but declined to make further payments or to proceed

under the contract on the ground that the property was subject to "two outstanding one cent ground rents," and that for that reason the vendors were unable to "furnish a good and merchantable title" to it.

On September 6th, 1930, the vendors filed in the Circuit Court No. 2 of Baltimore City their bill of complaint against the vendee, in which, after alleging the execution of the contract, the payment of $500 on account of the purchase price, and the refusal of the vendee to make further payments, they related that they had informed the vendee's attorney that the ground rents were barred, but that while they held the land in fee simple they would nevertheless co-operate with the vendee in purchasing a release of the supposed rents, but that he refused to aid them, and declined to perform his part of the contract, and they accordingly prayed that it be specifically enforced. The defendant in his answer stood on the letter of his contract, and asserted that the outstanding ground rents make the title unmerchantable and excused him from performance of it.

The case was heard upon bill, answer, and evidence, and at the conclusion of the hearing the chancellor dismissed the bill. This appeal is from that decree.

It was proved without contradiction that the land described in the contract of sale is a part of a 71-acre tract which, on June 9th, 1822, John Spear Smith and others leased to a certain Catherine McDermott subject to an annual ground rent of one cent "if demanded," and that since 1910 Charles Gensler, Theodore Messersmith, and Charles L. Kohlstead have held the paper title to both the reversion and the leasehold interest in 49 acres of the 71-acre tract, and that they also own the reversion in the residue of the whole tract. It is also conceded that by mesne conveyances the leasehold title to the whole tract of 71 acres became vested in Elisha Hoddinott in 1888, and that he, by a sublease dated January 13th, 1892, assigned a portion of the entire tract to John and Anna Neïdhardt upon an annual ground rent of one cent "if demanded," and that the part so subleased by Hoddinott to the Neïdharts is now vested in

Henry and Annie Arnd by virtue of an assignment from John Neidhardt and others dated May 9th, 1907, which contained this clause: "to have and to hold the said above described lot or parcel of ground and premises, unto and to the said Henry Arnd and Annie Arnd, his wife, as tenants by the entireties and to the survivor of them, their personal representatives and assigns, for all the residue of the term of years yet to come and unexpired therein with the benefit of renewal thereof from time to time forever, subject to the payment of the annual rent of one cent, if demanded."

The only issue of fact in the case was whether the reversioners had ever demanded of the lessees payment of the one-cent ground rent payable under the lease of 1822, and upon that issue there was a sharp conflict in the testimony. Mr. and Mrs. Arnd testified that, prior to January 10th, 1930, no demand for the alleged ground rents was ever made upon them, and that prior to that date they did not know of any ground rent on the property but had believed they owned it in fee simple, but that on that date Hoddinott, Charles Gensler, and a Mr. Kohlstead, acting for the reversioners, did demand rent claimed to be due for 1928 and 1929.

Charles Gensler, testifying for the defendant, said that in 1910 he, Theodore Messersmith, and Charles L. Kohlstead acquired the reversion in the 71-acre tract, and that in July of that year he demanded one cent of Arnd as rent, and that from time to time he renewed the demand until 1912, when he sold his interest to Kohlstead. John F. Neidhardt, a nephew of the John Neidhardt named in the sublease from Hoddinott, testified that he knew of no demands for rent, but as his connection with the property was not shown, and there was no apparent reason why he should have known even if demand had been made, his testimony is of little value.

It also appeared that the 49-acre tract, which Gensler, Messersmith and Kohlstead acquired during or prior to 1910, has been laid off in lots as part of a development called Woodholme.

Other than vague, uncertain, hearsay testimony, there is

nothing in the record to show how, when, or from whom Gensler, Kohlstead, and Messersmith acquired their interest either in the reversion or the leasehold interest in the 49-acre tract or the reversion to the 71-acre tract. There is, it is true, a partly illegible photostatic copy of what is called a "chain of title"; but in the absence of some explanatory testimony, which the record does not contain, it is quite unintelligible, and certainly cannot be accepted as the basis for a judicial conclusion. There is also a stipulation in the case as to certain deeds, but it relates exclusively to the devolution of the leasehold interests created by the original lease from Smith in 1822 and the sublease from Hoddinott in 1892. It may, however, be inferred from statements and admissions by Gensler and Kohlstead, and a statement by counsel for the appellee, that "Hoddinott has the sublease but the original lease is in Theodore Messersmith and Charles L. Kohlstead," that at some time during or prior to 1910 Gensler, Messersmith, and Kohlstead acquired the leasehold interest in 49 acres of the 71-acre tract, and during that year they acquired the reversion in the 71-acre tract out of which the 49 acres as well as the land now owned by the appellants have been carved.

The question in the case is whether those facts show with the degree of certainty required in cases of this character that the appellants have a title to the land described in the contract of sale, which the appellee is bound to accept as merchantable.

While not a word of precise significance, by common usage the word "merchantable," when used in contracts for the sale of land, means free from incumbrances and free from any rational or substantial doubt (*Words and Phrases,* First, Second, and Third Series; 36 *Cyc.* 638; *Bullock v. Staylor,* 125 Md. 699, 96 A. 398; *Stewart v. Kreuzer,* 127 Md. 1, 95 A. 1052; *Cityco Co. v. Friedenwald,* 130 Md. 330, 100 A. 374), and the word "incumbrance" has been held to include leases and ground rents. 39 *Cyc.* 490. While in this case the rents are merely nominal, yet the difference between the incidents of a fee simple estate and one subject

to a rent is so substantial that a leasehold title, although merchantable as such, is not such a title as would satisfy a contract to convey a "good and merchantable title," where there is nothing in the contract to indicate that anything less than a fee simple title was meant. In other words, "a good and merchantable title" ordinarily means a title in fee simple, and in the absence of anything in the contract itself to qualify those words, the burden is upon him, who asserts that in a particular contract they have a different meaning, to establish that fact.

If then it appears that the title of the appellants to the property described in the contract of sale is subject to two one-cent ground rents, it is not a title in fee simple, and they are not entitled to the relief prayed in their bill.

That they did not acquire a fee simple title to the property under the deed of assignment from Neidhardt and others on May 9th, 1907, conclusively appears from the instrument itself, for it granted to them, not a fee simple title, but the unexpired part of a term of years yet to come. So that whether the Neidhardts themselves owned a fee simple title is immaterial, for, whether they did or not, they did not convey such a title to the appellants, and the mere fact that they could have granted a fee simple title cannot change the nature of the deed which they executed, or enlarge that which was a mere assignment of a term to a grant in fee simple. The converse of that proposition · was before the court in *Worthington v. Lee,* 61 Md. 530, where the title was leasehold while the grant was in fee, and there it was held that a grant in fee, which was more than the grantor owned, was nothing more than the assignment of a leasehold which he did own. Page 539 of 61 Md. But in this case the assignors, if they held a fee in the property, granted less than they owned, for they conveyed expressly subject to the payment of the annual rent of "one cent" if demanded, and while they themselves have no further interest in the land, the instrument is an acknowledgment of the present force and effect of the lease creating that rent. There is, it is true, doubt inhering in that expression "subject to the payment

of the annual rent of one cent, if demanded," since it does not appear whether the reference is to the rent payable under the original or the sublease, but that fact does not aid the title, since the grant is expressly for the unexpired portion of a term.

But conceding that, it may nevertheless be that the appellants, at the time the contract of sale was made, or at least at the time the case was heard, did own a fee simple title to the property. An estate in fee simple is one in which the tenant holds absolute and exclusive control and dominion over the property. *Tiffany on Real Property*, sec. 20. And no matter how acquired, an interest, having those incidents, in land, is an estate in fee simple.

Code, art. 53, sec. 27, in part provides that: "Whenever there has been no demand or payment for more than twenty consecutive years of any specific rent reserved out of a particular lot or any part of a particular lot under any form of lease, such rent shall be conclusively presumed to have been extinguished and the landlord shall not thereafter set up any claim thereto or to the reversion in the lot out of which it issued, or have the right to institute any suit, action or proceeding whatsoever to recover said rent or said lot; but in case such landlord shall be under any legal disability when such period of twenty years of non-demand or non-payment shall expire, he shall have two years after the removal of such disability within which to assert his rights."

In construing that statute, the court, in *Safe Deposit & Tr. Co. v. Marburg*, 110 Md. 420, 72 A. 839, 843, where rent had neither been demanded by the landlord nor paid by the tenant for the statutory period, said: "We are of the opinion, therefore, first, that by virtue of section 26, article 53 of Code (Act 1884, p. 670, ch. 502), the rents reserved in the leases from Robert Sinclair, herein referred to, have been extinguished, and as a result of that a fee simple title vested in the owners of those leasehold interests upon the expiration of the statutory period provided in the act." And since it is conclusively established in this case that, except for possible claims by the reversioners under the original and subleases,

the appellants own the entire interest in the land described in the contract of sale, it follows that, if rent has not been demanded or paid under such leases for twenty years, or if for any other reason said reversioners are barred from demanding such rent, the appellants hold a fee simple title to the land.

There is not the slightest evidence in the case, one way or the other, to show that rent was demanded or paid prior to 1907. There is testimony that the rent payable under the original lease was demanded in 1910 and as late as July 9th, 1912, but there is no evidence that the rent payable under the sublease was ever demanded prior to 1930, and it is conceded that it was never paid. The appellants testified that no demand was made upon them prior to 1930 for rent payable under either lease, and that they had never at any time paid any such rent. That conflict might under other circumstances create a doubt sufficient to require the dismissal of appellants' bill, for, since the reversioners are not parties to this proceeding, such a conflict, if upon the existence of a fact materially affecting their interests, would suggest a very real possibility that the title might be involved in litigation. But it has no such effect in this case.

In respect to the lease from Hoddinott, the positive and uncontradicted evidence is that no rent under it was paid or demanded for more than twenty years before this suit, although it appears from a statement of counsel for appellee that Hoddinott was living when the case was heard on November 12th, 1931.

With respect to the original lease, the uncontradicted evidence is that no rent was ever paid in that period, and the only evidence as to demand is that in 1910, and from time to time until July 9th, 1912, demand was made for an annual ground rent of "one cent". But when that demand was made the reversioners not only owned the reversion in the whole tract, but the leasehold in forty-nine acres of it, and there was a merger in them as to that part of both the leasehold and the reversionary interest. *Tiffany, Landlord and Tenant,* sec. 12. In *Tiffany on Real Property,* sec. 412, it is said: "Thus, if the tenant of the whole premises leased sur-

renders his leasehold interest in a part thereof, or his leasehold is otherwise in part merged in the reversion, the rent is apportioned, it being extinguished in an amount proportioned to the value of the portion as to which the lease is no longer outstanding, while still existent as regards the balance." In support of that statement the author cites "*Litt.,* sec. 222; *Co. Litt.,* 148a; *Smith v. Malings,* Cro. Jac. 160; *Higgins v. California Petroleum & Asphalt Co.,* 109 Cal. 304, 41 P. 1087; *Leitch v. Boyington,* 84 Ill. 179; *Ehrman v. Mayer,* 57 Md. 612; *Nellis v. Lathrop,* 22 Wend. (N. Y.) 121, 34 Am. Dec. 285; *Van Rensselaer v. Gifford,* 24 Barb. (N. Y.) 349."

The effect of that merger was to work an apportionment of the rent (*Ehrman v. Mayer,* 57 Md. 622), since it was in its nature a rent service. *Ibid.* But where such a rent is of such a nature that it cannot be divided or apportioned, "a purchase by the landlord of the leasehold in part of the land will extinguish the rent," *Tiffany, Landlord & Tenant,* sec. 175; *Litt.,* sec. 222; *Co. Litt.,* 149a; *Bruerton's Case,* 6 Coke, 1; *Talbot's Case,* 8 Coke, 105.

Assuming, therefore, that Gensler did in 1910 and in 1912 demand one cent from the appellants, that was not a demand for the rent due, for the one cent was on the entire tract and Gensler, Messersmith and Kohlstead at that time held the leasehold interest in forty-nine acres of that tract, and at most they were only entitled, in the absence of any evidence of a contrary intent on the part of the tenants who surrendered so much of their lease, to demand a portion of the original rent, since in the absence of such an intent they could not call upon the holders of the leasehold to pay the same rent for a part of the leased property as they had agreed to pay for the whole. *Hamburger v. Finkel,* 148 Md. 275, 129 A. 289.

But apart from that consideration, a more substantial objection is that the idea of dividing or apportioning a ground rent of one cent is wholly fictitious and unreal, for, as the smallest unit of currency, a cent, is indivisible, since to divide it physically would be to destroy such value as it

might have as a coin and there are no smaller coins to represent fractions of its value. It is, therefore, a mere chattel, such as is spoken of in *Bruerton's* case, *supra*, where it was said: "Although the tenancy and every part of it is held and charged with the entire services; yet therein observe this difference, between the act of the tenant by the severance and parcelling of the tenancy to others (for that shall give benefit to the lord who is a stranger to it) *res inter alios actae nemini nocere debent, sed prodesse possunt;* but the act of the lord himself to take any of the parcel of the tenancy, shall turn to his prejudice; for by his acceptance of any part of the tenancy all the said yearly entire services are gone and extinct; and therefore if one holds his land of his lord by the yearly service of a hawk, horse or the like; if in such case the lord purchases part of the tenancy such entire services are gone, because such service cannot be severed or apportioned. And forasmuch as he has discharged part of his own act, the whole entire service is gone, in the same manner as if he had released his seigniory in part of the tenancy, all the seigniory by his own act is gone." When therefore the reversioners acquired the leasehold interest in so large a part of the leased property, they were no longer entitled to receive or collect a rent service which was itself indivisible and issued out of the entire tract (*Talbot's* case, 8 Co. Rep. 106b), and the appellants hold the land free and clear from any obligation to pay rent to the reversioners under the lease of 1822. And since it appears from the only evidence before us that the rent created by the sublease from Hoddinott is barred under the statute (Code, art. 53, sec. 27), the appellants have a present fee simple estate in the property.

As the only defense to the bill was that the appellants could not furnish a good and merchantable title to the property, it follows that the decree of the learned chancellor refusing the relief prayed must be reversed.

> *Decree reversed, and case remanded for further proceedings in accordance with the view expressed in this opinion, with costs to the appellants.*