C. ALLEN ANDERSON ET AL. *v.* SUSQUEHANNA POWER COMPANY.

[No. 27, January Term, 1932.]

502

*Decided April 29th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William J. Bratton,* for the appellants.

*Stevenson A. Williams,* with whom was *Fred Williams* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Cecil County, overruling a demurrer to a bill filed by the appellee, the Susquehanna Power Company, against the appellants, C. Allen Anderson and others.

The facts alleged in the bill are substantially these: On the 29th day of May, 1929, the appellee became entitled to

and possessed of the leasehold interest of a lot or parcel of land in the town of Port Deposit, known as the Sash Factory Wharf property. The leasehold interest in this land, now held by the appellee, came to it through and by virtue of a sublease from Ebenezer D. McClenahan to Wesley Wiley, William Thompson, and Norman W. Noland, dated December 12th, 1854, and subsequent mesne conveyances. At the time of the filing of the bill, the holders of the reversionary interest in said land were, as therein alleged, Anderson and others, the appellants. This interest, as claimed by them, was acquired through and by virtue of a deed from Ebenezer D. McClenahan to C. Allen Anderson, dated the 4th of April, 1859, and by subsequent mesne conveyances, wills, and intestacies.

The land in question is composed of two lots, which are designated on the plat found in the appellee's brief as X and Y. The fee simple interest in these lots was originally held by Rebecca E. Creswell. The northern lot, or lot X, is the western portion of the lot that was demised or leased by Rebecca E. Creswell unto Thomas J. Quigley, on the 4th of April, 1833, for the term of ninety-nine years, renewable forever, at an annual rental of sixty dollars. The southern lot, or lot Y, is the western portion of the lot leased or demised by Rebecca E. Creswell on February 15th, 1847, to one John Moore, for the term of ninety-nine years, renewable forever, at an annual rent of forty-five dollars.

In the lease from McClenahan, these lots were demised or leased to Wiley, Thompson, and Noland, "their executors, administrators and assigns, as tenants in common, from the day next before the day of the date of these presents, for all the rest and residue, save one year of the terms for years yet to come and unexpired in said premises; yielding and paying therefor during the term thereby granted, to the said Ebenezer D. McClenahan, his executors, administrators and assigns, the yearly rent or sum of one hundred and twenty dollars, * * * accounting from the first day of July, eighteen hundred and fifty-four and payable in half yearly

payments of sixty dollars each thereafter on the first day of January and July, in each and every year."

The lease contains a provision that, in case of default in payment of the rent, it should be lawful for the lessor, his executors, administrators, and assigns, to make distress therefor. It is also provided therein "that the said Ebenezer D. McClenahan, his executors, administrators or assigns, shall at any time during the continuance of this demise at the request and cost of the said parties hereto of the second part, their executors, administrators or assigns, and upon their paying or tendering in payment the sum of ten dollars, lawful money as a fine therefor to the said party of the first part hereto, his executors, administrators, or assigns, make, execute and deliver or cause and procure to be made, executed, and delivered to the said parties of the second part hereto, their executors, administrators, or assigns, a good and sufficient lease of the above demised premises, reserving to himself, or themselves a reversion of one day therein which lease shall contain all and singular the covenants, conditions and agreements herein contained, and in particular a covenant for perpetual renewment, so that the estate and interest hereby created shall be renewable from time to time forever."

There is in the lease a subsequent provision that "the said Ebenezer D. McClenahan, his heirs, executors, administrators or assigns, shall and will at any time hereafter, at the request and cost of the said parties hereto of the second part (Wiley and others), their executors, administrators, or assigns, and on their paying or tendering in payment to the said Ebenezer D. McClenahan, his executors, administrators, or assigns, the sum of two thousand dollars, lawful money, with all arrearages of rent, then due, with a pro rata portion of the accruing year's rent, make, execute, acknowledge and deliver to the said parties hereto of the second part, their executors, administrators or assigns, a deed of assignment of the lot of ground and premises herein described, subject to one cent ground rent and free clear and discharged of the rent herein reserved and all encumbrances."

Ebenezer D. McClenahan, by the aforementioned deed of April 4th, 1859, conveyed unto Allen Anderson the reversionary interest in the land subleased by him to Wiley, Thompson and Noland, "subject to the legal operation" of that lease. In his deed to Allen Anderson, McClenahan "covenanted that he has the right to convey the said lot of ground."

It is alleged in the bill that the rent of the western portion of the lot, leased unto John Moore by Rebecca E. Creswell, or lot Y, was discharged from the ground rent reserved by the redemption and extinguishment of the rent of the eastern portion of the Moore lot by the owner of the reversionary interest therein, against which it seems the owner of such reversionary interest had elected to charge and collect the annual ground rent of forty-five dollars.

It is also charged in the bill, as affecting lot X, that, "at least for the last consecutive forty (40) years there has been no demand or payment of the said specific original or paramount rent of sixty dollars ($60) reserved out of the lot described in the aforesaid lease from Rebecca E. Creswell to Thomas J. Quigley, whereof a part of the said Sash Factory Wharf lot is a part, and that the said original rent is conclusively presumed to have been extinguished by operation of law, and that the said named defendant owners and the said unknown heirs of other owners of the said original rent are barred from setting up any claim to said rent or to the said original reversion in that part of said lot and lands described in the said deed of assignment from William B. Steel" to the plaintiff, "and known as the Sash Factory Wharf property, nor have the said owners or the said unknown heirs of owners any right to institute any suit, action or proceeding whatsoever to recover the said original rent or the said lot or land."

The allegation is also made in the bill that the one cent rent mentioned in the sublease from McClenahan to Wiley and others was a part of the rent reserved, and ran with that lease.

McClenahan died "long years ago, leaving two sons and one daughter and the children of a daughter who predeceased

him, and that all his said children are dead and that the names and residences of the heirs of the said two sons and two daughters of the said Ebenezer are unknown, * * * and that for the last consecutive forty (40) years at least, there has been no demand or payment of the said specific rent of one cent reserved out of the lot or lands aforesaid, and that such rent is conclusively presumed to have been extinguished by the operation of law, and the said unknown heirs are barred from setting up any claim to said rent or to the said reversion in the said lot and lands out of which it issued by virtue of the aforesaid lease, nor have they any right to institute any suit, action or proceeding whatsoever to recover the said rent or the said lot of land."

The appellee, the Susquehanna Power Company, the holder of the leasehold interest in the property, prior to the filing of the bill on November 29th, 1930, being as claimed, "entitled to its express right to redeem the aforesaid subreversion or ground rent of $120," attempted to redeem the same by tendering to George McC. Anderson, representing the majority of the defendants or holders of the reversionary interest, the sum of "two thousand dollars ($2,000), with all arrearages of rent then due with a *pro rata* portion of the accruing year's rent," but the said George McC. Anderson declined to accept the same. Whereupon the bill in this case was filed, asking for a specific performance of the aforesaid agreement contained in the lease from McClenahan to Wiley and others, in relation to the redemption of the subreversion or ground rent. A demurrer was filed to this bill and was overruled.

The demurrer is: "To so much and such parts of the plaintiff's bill of complaint as charge that the one cent rent, mentioned in the sub-lease from Ebenezer D. McClenahan to Wesley Wiley et al., * * * has been extinguished and was prior to extinguishment the property of the heirs of said McClenahan"; and also "to so much and such parts of the relief prayed for by said bill as would, if granted, declare said one cent rent to be extinguished, as of the property of said McClenahan heirs: and for cause of these demurrers, these defendants show:

"That said one cent rent does not come into existence until the redemption of the one hundred and twenty dollar rent by said sub-lease created and reserved, such redemption being expressly made subject to said one cent rent by said sublease; that upon the redemption of said one hundred and twenty dollar rent, said one cent rent should be reserved to these defendants and others, as representatives of their grandfather, Allen Anderson, deceased; and that the plaintiff in its bill of complaint has not set forth such a cause as entitles it to a decree for the extinguishment of said one cent rent, or for a redemption of said one hundred and twenty dollar rent free from said one cent rent."

The demurrer was overruled, and it is from that action of the court that the appeal in this case was taken.

The only question presented by this appeal, and the sole question decided by the court in its action upon the demurrer, is whether the appellee, in the redemption of the rent under the provisions of the lease to Wiley and others, is, upon the payment or tender of payment of the $2,000 mentioned therein with all arrearages of rent then due, with a *pro rata* portion of accruing year's rent, entitled to have conveyed to it by the appellants the land in question free and clear of the one cent ground rent mentioned in the lease; or whether said land should be conveyed subject to said one cent ground rent. The trial court held in its action upon the demurrer that the land should be conveyed to the appellee free and clear of such rent. The contention of the appellants that the one cent ground rent was not, by the terms of the lease, to come into existence until the sublessees, Wiley and others, or their administrators, executors, or assigns, had exercised the option to redeem the rent under the provision of the lease, is, we think, consistent with the proper construction of the language of the lease. Consequently, there was no extinguishment of the one cent rent because of the failure to demand and collect it, as contended by the appellee.

In the lease from McClenahan to Wiley and others, lessees were to have and to hold the property leased "from the day next before the day of the date of these presents, for all the

rest and residue, save one year of the terms for years yet to come and unexpired in said premises."

The leases from Creswell to Quigley and from Creswell to Moore, dated April 4th, 1833, and February 15th, 1847, were to expire, unless renewed, on April 4th, 1932, and February 15th, 1946, respectively. It was to the terms of those leases to which McClenahan referred in saying, "for all the rest and residue, save for one year of the terms for years yet to come and unexpired in said premises."

The option or right to redeem found in the lease from McClenahan to Wiley and others could have been exercised at any time after its execution, and so long as the relations of the parties created by the lease existed.

There was no stated time mentioned in the lease for which the one cent rent was to be paid, and it may be asked, When was the payment of such rent to cease? The payment of it was not, at most, to extend beyond the terms of the original or paramount leases to Quigley and Moore, and only then in the event of those leases remaining in force and effect. The bill alleges that those leases were extinguished years ago and are no longer in force; and, as the case is before us on demurrer, we must accept that allegation as true. This being so, it would seem that the payment of said one cent rent would not extend beyond the terms of the sublease, which as to lot X, or the lands embraced in the Quigley lease, was to expire on the 4th day of April, 1931, and as to lot Y, or the lands embraced in the Moore lease, on February 15th, 1945.

The appellee before and about the time of the filing of the bill, on November 29th, 1930, about four months before the expiration of the sublease of lot X, attempted to exercise the option by tendering to the appellants the sum of $2,000, with all arrearages of rent then due, with a *pro rata* portion of the accruing year's rent. The appellants, owners of the reversionary interest, refused to convey the property to the appellee, unless it was conveyed subject to the one cent rent.

No action was taken on the demurrer until July 31st, 1931, several months after the expiration of the term of the sublease of lot X, when the court overruled the demurrer,

holding that the lots mentioned in the sublease to Wiley and others should be conveyed by the appellants to the appellee free and clear of the one cent rent. At that time the rights of the appellants, or the reversioners, to impose the rent of one cent, had ceased to exist, nothwithstanding the fact that the term of the sublease of lot Y had not expired, but had a few years yet to run. Lot X at that time was not subject to the payment of any part of the one cent rent, and any adjustment or apportionment of the one cent rent, by which any part thereof was to be imposed upon lot Y, would, we think, be impracticable, if not impossible. *Arnd et al. v. Lerch,* 162 Md. 318, 159 A. 587.

The order of the court appealed from will be affirmed.

> *Order affirmed, and case remanded for further proceedings in accordance with this opinion; appellants to pay the costs.*

PARKE, J., dissents.