MOHR ET AL. *v.* SANDS ET AL.

[No. 129, October Term, 1956.]

*Decided May 7, 1957.*

208

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Eli Baer,* with whom were *John Brockenbough Fox* and *Malcolm J. Coan* on the brief, for the appellants.

*Arold H. Ripperger,* with whom was *Harry W. Allers* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

Mrs. Dorothy Marie Mohr, one of the plaintiffs-appellants, entered into an agreement to purchase a new 1955 Nash automobile under a conditional sales contract from Suburban Nash, Inc. (referred to below as "Suburban"), dated June 6, 1955. A few days later Mrs. Mohr's conditional sales contract was assigned for value to Universal C.I.T. Credit Corporation (referred to below as "C.I.T."), with a repurchase agreement; and the contract was duly recorded on June 9, 1955, among the Chattel Records of Baltimore City. On July 27, 1955, the Department of Motor Vehicles issued a certificate of title for the automobile in Mrs. Mohr's name. The certificate was delivered to Suburban without any lien being noted on it; but when Suburban delivered the title certificate to C.I.T. a lien in the latter's favor, dated one month later than the contract, had been typed thereon. Unbeknown to C.I.T. Mrs. Mohr was not in fact buying the automobile for herself, but she was allowing her ex-husband, a salesman for Suburban, to use her credit to purchase the car for use as a demonstrator. He was supposed to make the payments, and all instalments actually paid to C.I.T. were made by checks of Suburban. Mr. Mohr did not testify.

On July 19th Mr. Henry A. Sands, one of the defendants-appellees, purchased the same automobile from Suburban through a salesman other than Mr. Mohr under a conditional sales contract which was assigned for value to Automobile Acceptance Corp. (referred to below as "Auto Acceptance"), with recourse; and this contract, too, was duly recorded.

Acting upon a forged application for a duplicate title, purportedly signed and acknowledged by Mrs. Mohr, alleging

that the original had been lost, and upon a similarly forged assignment from Mrs. Mohr to Sands, and an application for a new title purportedly signed by Sands, but also stated in the testimony to have been forged, the Department of Motor Vehicles issued a new certificate of title for the automobile in question to Henry A. Sands showing a lien in favor of Auto Acceptance, and (since the records of the Department showed none) showing no lien in favor of C.I.T.

Neither Mrs. Mohr, Sands, Mrs. Sands (who joined with her husband in executing the contract of conditional sale with Auto Acceptance), nor C.I.T., nor Auto Acceptance had any knowledge of any forgery. Mrs. Mohr and C.I.T. brought this suit, praying a declaratory judgment to the effect that they were, respectively, the owner of, and the holder of the sole valid lien on, the automobile. The Chancellor below found in favor of Sands and Auto Acceptance and dismissed the bill of complaint. This appeal is from the decree of dismissal.

In addition to the facts above stated, there was testimony by Mrs. Sands that she and her husband had seen the automobile on the showroom floor of Suburban three times in the week preceding their purchase of it and that it was on the floor when they bought it. There was also testimony by an employee of Suburban who denied that the car was on the showroom floor, but said that it was kept with new cars, other demonstrators and used cars behind Suburban's garage. The trial judge found "as a fact that Suburban Nash never parted with possession of the automobile in question until it was delivered to Mr. and Mrs. Sands, although it may have been used as a demonstrator by Mr. Mohr." This finding, we think, is warranted by the evidence, and it is therefore binding.

Also, Mrs. Mohr testified that she never had and never expected to have possession of the automobile; that she was only allowing the use of her name and credit to her ex-husband, an automobile salesman for Suburban; that he was supposed to make all payments for it and that she turned over to him the C.I.T. book of coupons to accompany payments; and that she knew that the car was to be used as a demonstrator.

The appellants (1) rely upon the recorded contract of conditional sale as constructive notice under Code (1951), Article 21, Section 74, to the appellees of the appellants' rights in and to the automobile; and claim that under Article 83, Section 41 (1) the appellees could acquire no better title to the car than Suburban had, and (2) they deny that they (the appellants) are subject to any estoppel under this Section of Article 83.

Code (1951), Article 21, Section 74, provides:

> "Every note, sale or contract for the sale of goods and chattels, * * * wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee * * * [shall] be void as to subsequent purchasers * * * until such note, sale or contract be in writing, signed by the vendee and be recorded, * * * where the vendee resides * * *. Such recording shall be sufficient to give actual or constructive notice to such parties * * *."

The appellees contend: (1) that where the vendor of a chattel remains in possession, a purported contract of conditional sale covering the chattel, even though duly executed and recorded, is ineffective to give actual or constructive notice of any rights thereunder to a *bona fide* purchaser for value who buys the chattel from the original vendor; and (2) that, if their first contention should not prevail, there is an estoppel against those claiming under the first contract of conditional sale. The first of these contentions is based upon Code (1951), Article 83, Section 41 (2) (a) and Section 43, and Article 21, Sections 49 *et seq.;* and the second rests upon Section 41 (1) of Article 83. Each of these Sections of Article 83 is a part of the Uniform Sales Act.

Section 43 of Article 83 reads as follows:

> "Where a person having sold goods continues in possession of the goods, or of negotiable documents

of title to the goods, the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge or other disposition thereof, to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same."

Section 41 (2) (a) states that nothing in this sub-title (the Sales Act) "shall affect the provisions of any * * * recording acts, or any enactment enabling the apparent owner of goods to dispose of them as if he were the true owner thereof."

Section 49 of Article 21 provides (so far as here pertinent):

"No personal property, of any description whatever, whereof the vendor, mortgagor, or donor shall remain in possession, shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagee or donee, as against subsequent purchasers, mortgagees, incumbrancers * * *, pledgees * * * unless by bill of sale or mortgage acknowledged and recorded as herein provided; * * *"

This case is, in a sense, the converse of *Praeger v. Emerson-Brantingham Implement Co.,* 122 Md. 303, 89 A. 501, and *Dinsmore v. Maag-Wahmann Co.,* 122 Md. 177, 89 A. 399, in which the recording requirements applicable to bills of sale were held not applicable to conditional contracts of sale. In each of those cases the seller had transferred actual possession to the buyer, and hence the situation did not call for recording a bill of sale; and when those cases arose, there was no requirement for recording conditional contracts of sale and the seller's reservation of title under such a contract was good as against anyone except a *bona fide* purchaser who dealt with the conditional sale vendee without notice of the rights of the conditional sale vendor. (See the

*Praeger* case, at page 308 of 122 Md.) Here, under the finding of fact of the trial court, the vendor remained in possession, and the ostensible vendee, Mrs. Mohr, never had possession, and her testimony that she was never intended to have possession of the car is uncontradicted. In these circumstances, the case of *Tripp v. National Shawmut Bank,* 263 Mass. 505, 161 N. E. 904, is pertinent. In that case an automobile dealer made ostensible sales of new cars to salesmen for use as demonstrators, but actually retained possession of them, much as in the present case. There a car "sold" to one of the salesmen was resold by the dealer to a customer. The salesman's contract of conditional sale had been sold to the defendant bank. The court said (263 Mass. at 513): "It [the bank] was at least obliged to take the risk that the conditional sale contract upon which it relies was based upon a genuine transaction with the purpose and effect to make a real transfer of actual possession pursuant to that contract." The absence of any actual transfer calls for the use and recording of a chattel mortgage or (where appropriate) a bill of sale. See *Winakur v. Sapourn,* 156 Md. 662, 145 A. 342, referred to more fully below, and *Stem v. Crawford,* 133 Md. 579, 105 A. 780, which involved the sale of a growing crop and Section 43 (now, 46 then) of Article 83 of the Code. In the instant case, a bill of sale, if recorded, should have been recorded in Baltimore County, where Suburban had its place of business. The conditional contract of sale, however, was recorded in Baltimore City, since that was the place of residence of the ostensible purchaser, Mrs. Mohr.

In *Finance & Guaranty Co. v. Defiance Motor Truck Co.,* 145 Md. 94, 125 A. 585, a recorded contract of conditional sale was upheld where a truck had been sold by a manufacturer to a dealer with a view to resale by the dealer, and there was held to be no estoppel against the manufacturer in a controversy with a finance company which had lent money on the truck to one who had purchased it from the dealer. There, however, there was an actual transfer of possession of the chattel by the original vendor (the manufacturer) to the original vendee (the dealer).

In *Winakur v. Sapourn,* above cited, a money lender who

had taken and recorded a bill of sale for an automobile, which was absolute in form, was held not entitled to protection thereunder where there was a contemporaneous written agreement between the lender and the vendor, an automobile dealer, which was sufficient to show that the real transaction was a chattel mortgage, and the second agreement was not recorded. This result was reached because of the express provisions of Code, Article 66, Section 1, as then and now in force. With the effect of the bill of sale thus nullified, the lender was held estopped under what was then Section 44 (Section 41 of the 1951 Ed.) of Article 83 of the Code to challenge the title of a *bona fide* purchaser for value who had purchased the automobile in question from the dealer. The Court, speaking through Judge Offutt, was careful (156 Md. 679) not to go beyond the necessities of the case so as to "derogate from the rights of one who holds a lien on or title to a chattel under an instrument duly recorded, where under the statutes such record charges persons affected with notice of the existence and contents of the instrument."

The present case is a hard one in that some innocent persons must suffer from the fraudulent conduct of an unscrupulous dealer. Many such cases are determined on the basis of letting the loss fall upon the person who, by his conduct, created the circumstances which permitted the third party to commit the wrong or cause the loss. In the instant case, it is difficult to attribute what would ordinarily be regarded as negligence or fault to any of the parties other than Mrs. Mohr, and hence the basis for an estoppel against any of the others is difficult to establish. All of the parties to this case— customers of Suburban and finance companies alike—placed trust in Suburban, which was abused.

If we approach the matter from the point of view of the purpose of the recording statutes involved, we find that they serve primarily to give protection against the consequences of false or misleading appearances of ownership based upon the possession of chattels. Mrs. Mohr never had possession of the automobile in question and neither the Sands nor Auto Acceptance had any dealings with her and had no occasion to search the chattel records as to either the existence of, or

possible limitations upon, her interest in the car. The requirements of Section 74 of Article 21, that a conditional contract of sale covering chattels must be recorded at the place of residence of an individual vendee or where a corporate vendee has its principal place of business, or where realty to which they may be affixed is located, plus the fact that the statute, as well as business custom, contemplates the actual delivery to the vendee of the chattel which is the subject of a conditional sale, emphasize the view that the statute is concerned primarily with appearances based upon the vendee's possession of the chattel, and with the protection of the vendor's rights, notwithstanding the transfer of possession to the vendee, and not with the transfer or curtailment of any rights of ownership in the conditional vendor. Likewise, under Section 49 *et seq.* of Article 21, it is the danger of appearances from the possession of the vendor or mortgagor, which continues despite a change of ownership or the creation of a lien, with which the statute is concerned. Whether, in the case of chattels so readily movable as motor vehicles, a centralized place for the recordation of liens of all kinds thereon should be established is a matter for legislative determination. Up to this time nothing of the sort has been done here (such as we understand has been done in Virginia), and certificates of title issued by the Maryland Department of Motor Vehicles, as in this case, carry an express warning that the Department "is not a record office for the recording of liens."

In the instant case, an essential characteristic of a contract of conditional sale—possession of the chattel by the vendee— was lacking; and we feel constrained to hold that the recording of the purported contract of conditional sale did not operate to give notice to the world of the rights of the vendee or of her lienor. As to Mrs. Mohr, she was well aware of her actual and intended lack of possession; and even if she had been a genuine purchaser, we should have little difficulty in finding her estopped to assert her claim to the car as against the Sands and Auto Acceptance. See *Winakur v. Sapourn, supra,* and an Annotation in 18 A. L. R. 2d 813, at 823. C.I.T. was the victim of a comprehensive fraud, skillfully executed, and it is not surprising that it was thereby deceived.

However, as we have already said, we think that C.I.T. assumed the risk of the contract of conditional sale which it purchased representing a genuine transaction of that type. Since it did not, the recording of that document did not afford protection against a *bona fide* purchaser or lienor who dealt with the original vendor which remained in actual possession of the chattel.

In this view it is unnecessary to go further into any question of estoppel. Section 43 of Article 83 of the Code states a rule which is dependent upon neither estoppel nor consent, express or implied, of the first purchaser. See *Cottman v. Wagner*, 213 Md. 73, 130 A. 2d. 749. Under that Section we think that the Sands and Auto Acceptance are entitled to retain their ownership and lien upon the automobile in question.

The rights of C.I.T. and of Mrs. Mohr as between themselves are not before us in this suit.

*Decree affirmed, with costs.*