FORSYTH STORAGE AND TRANSFER, INC.
*v.* WILLIAM E. CRAMER CO. ET AL.

[No. 78, September Term, 1957.]

94

 

*Decided December 17, 1957.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James S. McAuliffe, Jr.,* with whom was *James H. Pugh* on the brief, for appellant.

*Howard Larcombe,* for appellees.

HENDERSON, J., delivered the opinion of the Court.

Forsyth Storage and Transfer, Inc. brought an action of replevin against the appellees to recover possession of a Gardner-Denver air compressor weighing about four tons, and damages for its detention. The case was heard by the court without a jury and resulted in a verdict for the appellees. The appeal is from a judgment for costs entered on the verdict.

There is little dispute as to the facts. It was shown that the Forsyth corporation is in the business of storing, repairing and transporting heavy machinery in Washington County, as well as heavy hauling and general contracting. Stine was a road contractor who had done business with Forsyth for many years, the latter storing, servicing and transporting his heavy equipment from job to job. Evidently Stine suffered financial reverses, for on February 23, 1955, he agreed to turn over to the corporation the Gardner-Denver air compressor in question, which he owned, in exchange for the release of a smaller Leroy air compressor of his, on which there was a repairman's lien of some $200.00, and in settle-

ment of a net balance of some $1,800.00 owed by him to the Forsyth corporation on various accounts stated. Stine did not execute a bill of sale, but delivered the compressor in question to the Forsyth shop. About a month later Stine went out of the contracting business and obtained work as a crane operator with the William E. Cramer Company of Washington, D. C.

There was a chattel mortgage, covering the compressor in question and other equipment, which had been executed by Stine in 1953 to the Farmers and Merchants Bank and duly recorded in Washington County. This mortgage was assigned, to the extent of some $3,600.00, to Mr. Martin Bostetter in October, 1955. Mr. Richard Forsyth testified he had agreed with the bank to pay it $1,000.00 for the release of its lien on the air compressor, and that in November, 1955, he agreed to pay that sum to Mr. Bostetter, $500.00 down and $500.00 in thirty days. He sent a check for $500.00 to Mr. Bostetter, but the latter did not cash it, probably because he changed his mind about releasing the security. In any event no further payment was made. Mr. Forsyth also testified that the agreement to pay the bank was a part of his agreement with Stine when the machine was delivered in February. In March, 1955, Forsyth rented the air compressor to the North American Cement Corporation and delivered it to its plant about two miles from Hagerstown. The terms of the rental agreement were that payment should be at the rate of $422.00 a month, when the machine was in use but not otherwise. Under this arrangement about $1,500.00 was received in the year following delivery, the machine remaining at the plant of the Cement Corporation. No part of this rent was ever paid to Stine nor did he make any claim thereto.

Early in February, 1956, Stine called at the Forsyth office and informed Mr. Forsyth he was working for the Cramer corporation, without disclosing the nature of his employment. He stated that he wanted to rent an air compressor for that company. Mr. Forsyth told him he had rented the Gardner-Denver compressor in question to the Cement Corporation. However, upon inquiry, it appeared that the Cement Corporation had no use for the machine at that time and was willing

to release it. Accordingly, it was returned to the Forsyth shop and loaded on one of its trucks for delivery to a job site in Montgomery County where the Cramer corporation was working. Stine rode with the Forsyth driver, George Renner, on the way to Montgomery County. Although Renner had been instructed to obtain a receipt, or purchase order, showing the rental terms, before making the delivery, he did not do so. He testified that Mr. Cramer was not at the job site, and that Stine told him he would see that the order was forwarded from the Washington office. He admitted, however, that Stine told him when he got out of the truck: "I guess you know I own that air compressor." He testified: "I didn't give him any answer, I didn't know anything about it." This occurred on February 6, 1956.

Mr. Cramer testified that Stine had approached him some time before and asked if he was interested in buying an air compressor Stine owned. He replied that he would be, if it was in good working order. He knew that Stine had been in the contracting business, but made no inquiry as to recorded liens, if any. When the machine was delivered and proved to be in working order, he paid Stine $2,800.00 for it. Stine executed a bill of sale for it on February 10, 1956. On February 8, 1956, Mr. Forsyth had phoned Stine in regard to a purchase order covering the new rental, but Stine made no claim of ownership at that time. As the order was not forthcoming, he got in touch with Mr. Cramer and learned the real situation. The replevin suit followed on February 17, 1956. It was brought out that Stine worked for Cramer several months after the replevin suit was filed, but then left its employ. He did not testify at the trial.

The trial court took the view that as between two innocent parties, each of whom was deceived by Stine, the Cramer corporation should prevail, "because the Forsyth Company had never even taken a Bill of Sale in connection with the transaction. They had nothing to put anyone on notice whatsoever that they were the owners of this piece of equipment, other than that it apparently was in their possession." We think this is not a correct statement of the applicable law.

Code (1951), Art. 21, sec. 49, does not require that a bill of sale be acknowledged and recorded in connection with a sale of personal property except where the personal property remains in possession of the vendor or mortgagor. In fact, it specifically provides that "nothing herein shall be construed to extend to any sale or gift, where the same is accompanied by delivery". Cf. *Biemuller v. Schneider*, 62 Md. 547, 558, and *Dinsmore v. Maag-Wahmann*, 122 Md. 177, 182. The importance of possession to a valid transfer of title was stressed in two recent cases. *Cottman v. Wagner*, 213 Md. 73, 76, and *Mohr v. Sands*, 213 Md. 206, 211. In the instant case it is clear that the air compressor was actually delivered to Forsyth and remained in its possession, or that of its lessee, down to the time it was delivered to the job site of Cramer. Subject to the lien of the recorded chattel mortgage held by Bostetter, who is not a party to this action and whose rights are not in dispute, title passed to the Forsyth corporation upon delivery. It is quite immaterial that no bill of sale was acknowledged or recorded. As we have seen, recordation is not necessary to the passage of title by delivery. The possession of Forsyth was itself a badge of ownership. The contention of the appellee, Cramer, that there was no sale to Forsyth, but that the latter was only a bailee for hire, finds no support in the evidence. The testimony that Forsyth obtained possession and collected rent on the machine for almost a year thereafter, which it credited to its own account with the acquiescence of Stine, is uncontradicted, nor did the trial judge indicate that he disbelieved the plaintiff's testimony. Even if we assume, without deciding, that there was a partial failure of consideration because of the failure of Forsyth to pay $1,000.00 to the bank, or its assignee, Bostetter, there is no evidence that passage of title was conditioned upon such payment. There is also a question whether Forsyth was obligated to tender the second payment after the first was not accepted. There was no evidence that Stine ever sought to repudiate the sale on this ground.

If title passed to Forsyth it is difficult to see how Cramer could acquire title from its vendor, Stine, who had no title to

convey. In *Allen C. Driver, Inc. v. Mills,* 199 Md. 420, 422, it was said: "It is a settled rule of the common law, founded upon a doctrine of the civil law, that a sale by a person who has no right to sell, is not effective as against the rightful owner. Thus, under the common law and the Uniform Sales Act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell. Code 1939, art. 83, sec. 41." [Code (1951), Art. 83, sec. 41.]

The appellee, Cramer, contends, however, that the appellant is estopped from asserting title because of his conduct. The authorities he cites, *Lemp Brewing Co. v. Mantz,* 120 Md. 176, and *Levi v. Booth,* 58 Md. 305, do not support this contention. Both cases state the proposition that the bare possession of goods does not clothe the possessor with the power to dispose of them as though he were the owner. Cramer could not assume that Stine had title simply because he secured the delivery of the compressor from the rightful owner, nor did Forsyth hold out to Cramer that Stine was the owner because it permitted Stine to accompany its driver in making the delivery. As stated in *2 Williston, Sales* (Rev. ed.), sec. 313, p. 244, "Although intrusting possession to another may lead an innocent third person to believe the possessor is the owner, no court has ever gone so far as to hold that the mere intrusting with possession would preclude the owner from asserting his title." In the instant case Stine was not held out as the agent of Forsyth. In fact, he was in the employ of Cramer. We find no basis for a claim of estoppel. Cramer simply took Stine's word that he owned the compressor, and made no inquiry of Forsyth, although it was delivered in Forsyth's truck. There is no evidence of any representation by Forsyth or any reliance thereon, other than the bare fact of delivery.

Under all the circumstances, we think the judgment should be reversed and the case remanded for the entry of a judg-

ment in favor of Forsyth, with such damages, if any, as may have been established by the testimony.

*Judgment reversed, with costs, and case remanded for further proceedings consistent with the views expressed in this opinion.*